**Christopher Lee FLORENCE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2001–SC–0658–MR.**

Supreme Court of Kentucky.

Aug. 21, 2003.

Rehearing Denied Dec. 18, 2003.

---

John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, Janine Coy Bowden, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, Christopher Florence, was convicted in the Fayette Circuit Court of one count of Criminal Possession of a Forged Instrument in the second degree, two counts of Theft by Deception Over $300, and Persistent Felony Offender (PFO) in the first degree. The final judgment sentenced Appellant to a total of twenty years' imprisonment. Appellant appeals to this Court as a matter of right.[1]

Appellant raises three issues on appeal, (1) whether the trial court improperly disallowed a *Daubert* hearing to determine the admissibility of scientific evidence, (2) whether the trial court erroneously failed to inquire into the reasoning behind Appellant's failure to testify, and (3) whether Appellant should have had a directed verdict on one or both counts of theft by deception.

On March 3, 1999, Appellant opened an account in the name of William C. Vance at Whitaker Bank, in Lexington by depositing $50 cash. The next day, he returned to the same bank location and cashed a bank counter check on the account for $35. On March 5, 1999, Appellant deposited a check for $3740 made payable to William C. Vance from Rooftek drawn on Fifth Third Bank. Whitaker Bank failed to place any hold on funds availability. It was later determined that the Rooftek account with Fifth Third Bank had been closed and the check was dishonored.

---

1. KY. CONST. § 110(2)(b).

Meanwhile, on March 6, 1999, at a different Whitaker Bank location, Appellant cashed another counter check for $3540 on the William C. Vance account. At that time, Appellant presented identification verifying that his name matched the name on the account. On March 7, 1999, Appellant issued a "starter" check for $903 to Trans World Express (TWE) to purchase an airline ticket. A TWE manager determined that this check was illegible, so Whitaker accommodatingly replaced it with a cashier's check.

On March 11, 1999, the Lexington Police Department took a report regarding William C. Vance from Whitaker Bank. It was determined by the police detective that William C. Vance was not the wrongdoer's correct name. Appellant's identity was learned by means of a Teletype from the police department in Hamilton County, Ohio. The Hamilton County police found a Kentucky identification card for a William C. Vance during an investigation of Appellant's half-brother. From this information, the Lexington detective obtained an arrest warrant for Appellant and the arrest was made.

Prior to trial, Appellant objected to any testimony from Detective Chris White, the Commonwealth's proposed handwriting analysis expert witness, regarding the "science" of handwriting analysis without a prior *Daubert* hearing. The trial court overruled the motion. It determined that handwriting evidence had been admissible for a long period of time and therefore a *Daubert* hearing was not necessary. At trial, before the Commonwealth put Detective White on the stand, it suggested that the trial court revisit the *Daubert* hearing issue. The Commonwealth stated that it could not in good faith argue that the scientific handwriting analysis testimony was admissible without a *Daubert* hearing. The trial court disagreed stating that

handwriting evidence has been "admissible for eons."

At trial, Detective White testified as to his training as a handwriting analysis expert, and he testified that his opinion in the case was based on the handwriting samples provided. Specifically, White testified that he completed a questioned document course offered by the United States Secret Service and he also participated in a two-year internship in the field. As a questioned document examiner, he is a member of the association of questioned document examiners and members of this organization exchange notes and compare experiences. White also testified that he has trained other questioned document examiners who have completed the course. White stated that he performs examinations for the police and privately. He testified that he has performed about 120 examinations.

White also testified about the science of handwriting analysis. He stated that handwriting is even more precise than DNA for identification purposes. To perform an examination, White testified that an examiner must have known samples and compare them with the questioned documents. In this case, the known samples were the William C. Vance identification card, and the Whitaker Bank account application. The questioned documents were the $35 cashed check, the deposited Rooftek check, the $3540 cashed check, and the $903 check payable to TWE. White opined that the questioned documents were consistent with the known documents and that all documents were written by the same person.

■ Appellant's first claim of error is that failure of the trial court to hold a *Daubert* hearing to determine the admissibility of the proposed expert testimony regarding handwriting analysis was an abuse of discretion. He claims that the error was compounded when the trial

court allowed the expert witness to testify about the science of handwriting analysis and express an expert opinion regarding the evidence presented at trial.

In *Mitchell v. Commonwealth,*[2] this Court adopted the analysis of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[3] wherein the United States Supreme Court set out key considerations for admitting expert testimony under the Federal Rules of Evidence. In *Goodyear Tire and Rubber Company v. Thompson,*[4] this Court adopted the reasoning of *Kumho Tire Company v. Carmichael*[5] in that the *Daubert* analysis "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."[6]

When a party proffers expert testimony, the trial court must determine in a preliminary hearing pursuant to KRE 104, "whether the expert is proposing to testify to (1) scientific [, technical, or other specialized] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[7] The nonexclusive, flexible factors to be considered in determining the admissibility of the proffered expert testimony as set forth in *Daubert* and adopted in *Mitchell* are: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique has general acceptance within its particular scientific, technical, or other specialized community.[8]

The foregoing factors represent the prevailing standard for the determination of whether to admit expert testimony. In *Johnson v. Commonwealth,*[9] we clarified when a *Daubert* hearing is required. This Court followed the Third Circuit decision in *United States v. Martinez*[10] where "it was held that once an appropriate appellate court holds that the *Daubert* test of reliability is satisfied, lower courts can take judicial notice of reliability and validity of the scientific method, technique or theory at issue."[11] In *Johnson,* we held that microscopic examination of hair has sufficiently met the scientific reliability standard and that a *Daubert* hearing was no longer required.[12] This Court identified other types of scientific evidence that had been recognized as reliable (breath testing for determination of blood alcohol content, HLA blood typing for paternity determination, fiber analysis, ballistics analysis, and fingerprint analysis), and "[o]n the basis of those decisions, trial judges in Kentucky can take judicial notice that those methods or techniques have achieved the status of scientific reliability."[13]

In the present case, the Commonwealth admits that there are no Kentucky cases

**2.** Ky., 908 S.W.2d 100 (1995), *overruled on other grounds, Fugate v. Commonwealth,* Ky., 993 S.W.2d 931 (1999).

**3.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**4.** Ky., 11 S.W.3d 575 (2000).

**5.** 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**6.** *Id.* at 141, 119 S.Ct. 1167.

**7.** *Goodyear Tire,* 11 S.W.3d at 578, quoting *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796.

**8.** *Daubert,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97.

**9.** Ky., 12 S.W.3d 258 (1999).

**10.** 3 F.3d 1191 (8th Cir.1993).

**11.** *Johnson,* 12 S.W.3d at 261.

**12.** *Id.* at 262.

**13.** *Id.* (citations omitted).

holding that handwriting analysis evidence is scientifically reliable. However in *Marcum v. Gallup* [14] and *Jones v. Sutton* [15] the lower courts allowed such expert testimony and were affirmed on appeal. In those cases, it seems to have been assumed that the testimony was admissible. As such, the state of the law with respect to handwriting analysis is similar to *Johnson v. Commonwealth, supra,* wherein various fields of scientific inquiry were recognized to have achieved acceptance in Kentucky law, and are thus acceptable for judicial notice. In such circumstances we held that the expert opinion would be admissible without a *Daubert* hearing but that an opposing party would be entitled to be heard with evidence to the contrary. "In this respect, however, judicial notice relieves the proponent of the evidence from the obligation to prove in court that which has been previously accepted as fact by the appropriate appellate court." [16] However, the foregoing should not be understood as depriving a trial court of discretion to conduct a *Daubert* hearing if the court believes a *Daubert* hearing would be helpful or doubts the reliability of the expert testimony.

Applying *Johnson*, there is a burden shift from the party offering expert testimony to the party opposing the testimony. The opposing party, when it so requests, has a right to present evidence that the scientific evidence at issue is not or is no longer scientifically reliable. In the present case, Appellant did not challenge the reliability of the expert handwriting analysis with evidence to the contrary. Rather he sought only a *Daubert* hearing, and under *Johnson v. Commonwealth* and relying on the general acceptance of handwriting analysis as demonstrated by *Marcum v. Gallup* and *Jones v. Sutton,* a preliminary hearing was not required without a proffer of evidence challenging the reliability of the discipline at issue.

■ There is another issue, however, that causes concern. In addition to testifying generally about handwriting analysis and expressing the opinion that Appellant had created the fraudulent documents at issue, Detective White was also permitted to extravagantly opine that handwriting analysis is more precise than DNA evidence, thus, in effect, testifying in favor of his own testimony. However, there appears to be no objection to this facet of Detective White's testimony and Appellant's request for a *Daubert* hearing is not sufficient to preserve the issue. If Appellant objected to this element of Detective White's testimony, it was his duty to object contemporaneously and seek appropriate relief from the trial court.[17] His failure in this regard is fatal to any relief in this Court.

Accordingly, there was no abuse of discretion by the trial court for failure to allow a *Daubert* hearing.

■ Appellant's second claim of error is based on a statement made by his trial counsel during closing argument. He contends that upon hearing the statement the trial court should have inquired to determine if Appellant was waiving his right to testify or whether Appellant desired to testify.[18]

---

**14.** Ky., 237 S.W.2d 862 (1951).

**15.** Ky., 255 S.W.2d 658 (1953).

**16.** *Johnson,* 12 S.W.3d at 262.

**17.** *Bowers v. Commonwealth,* Ky., 555 S.W.2d 241, 243 (1977).

**18.** Counsel stated to the jury that:

So if you are upset that Mr. Florence did not take the stand today. Don't be upset with him; be upset with me cause [sic] I am the one who told him not to testify. He doesn't need to testify. He's presumed innocent. The burden is on the Commonwealth, and they have not met their burden.

Appellant acknowledges that this claim is unpreserved, and as such we will consider this claim only under RCr 10.26. This Court recently decided *Crawley v. Commonwealth*,[19] wherein we held that "a trial court has a duty to conduct further inquiry when it has reason to believe that a defendant's waiver of his right to testify was not knowingly or intelligently made or was somehow wrongly suppressed."[20] In *Crawley*, the trial court questioned defense counsel to determine if counsel wanted to put on record that the defendant was aware of his right to testify but was waiving this right. Counsel responded in the negative because the appellant wanted to testify but she would not allow it. Counsel in *Crawley* then told the jury that appellant wanted to testify but that she would not allow him to testify so they should not hold it against the appellant that he did not testify.

The right to testify and present a defense is specifically a personal right of the accused.[21] Yet, *Crawley* makes it clear that circumstances can arise requiring the trial court to directly inquire of the accused for the protection of his or her constitutional rights. Refusal of counsel to allow a defendant to testify is such a circumstance. In this case, there is no statement by trial counsel that he refused to allow Appellant to testify. Likewise, there are no other arguments that manifested a need for a direct colloquy between the trial court and Appellant.

Appellant's final claim of error is that the Commonwealth failed to prove beyond a reasonable doubt that he was guilty of two counts of theft by deception. Appellant claims that the Commonwealth

failed to show that he knew that the check from Rooftek made payable to William C. Vance would not be honored. At trial, Appellant moved for a directed verdict at the close of the Commonwealth's case but failed to renew the motion at the close of all evidence.

Despite lack of preservation, a review of the evidence shows that Appellant was identified as the person cashing the checks and the person pictured on the Kentucky identification card for a William C. Vance. There was also evidence presented through testimony of a bank employee that Appellant had not made any further deposits or withdrawals since the last transaction. Based upon this review of the evidence, it was not unreasonable for the jury to find Appellant guilty.[22]

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

All concur.

---

19. Ky., 107 S.W.3d 197 (2003).

20. *Id.* at 199.

21. *See* U.S. Const. Amend. V and VI; Ky. Const. § 11; *Rock v. Arkansas*, 483 U.S. 44,

107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *United States v. Pennycooke*, 65 F.3d 9 (3rd Cir.1995); *Crawley, supra.*

22. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991).