**Brian P. EPPERSON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2013–CA–000431–MR.

Court of Appeals of Kentucky.

May 9, 2014.

Discretionary Review Denied by Supreme Court Aug. 14, 2014.

David M. Ward, Winchester, KY, for appellant.

Jeanne Anderson, Frankfort, KY, for appellee.

Before JONES, MAZE, and MOORE, Judges.

## OPINION

MAZE, Judge:

Appellant, Brian Epperson, appeals from his conviction and sentence following his trial in Powell Circuit Court. Specifically, he alleges that the trial court abused its discretion by denying his motion for a continuance following the Commonwealth's amendment of the indictment against him on the first day of trial. Epperson also argues that the trial court abused its dis-

cretion in failing to suppress toxicology test results, that a portion of Kentucky's DUI statute violates equal protection, and, in the alternative, that the cumulative effect of these defects in his trial resulted in prejudice against him.

As we conclude that justice required the trial court to grant Epperson's Motion to Continue, we reverse and remand this case for a new trial. Additionally, we affirm the trial court's determinations concerning the admissibility of expert testimony and Epperson's equal protection concerns surrounding KRS 189A.010.

## Background

The facts of this case are not in dispute. On November 14, 2011, the vehicle Epperson was driving crossed the centerline of a two-lane road in Powell County and collided with a vehicle occupied by Donald Tharp and a female passenger. As a result of the collision, Donald Tharp died and his passenger was injured. Epperson suffered only minor injuries and refused medical treatment at the scene of the accident. However, he subsequently submitted to field sobriety tests as well as blood and urine testing in the hours following the accident. Following these tests, authorities arrested Epperson and, on March 7, 2012, a grand jury indicted him on the charges of Murder, fourth-degree Assault, and DUI, first offense. The latter charge alleged, pursuant to KRS[1] 189A.010(1)(c), that the accident had occurred while Epperson was "under the influence of [a] substance or combination of substances which impaired his driving ability...."

On January 3, 2013, twelve days prior to trial, Epperson filed a Motion to Suppress the toxicology test results for a blood sample taken after the accident. The motion argued that the results of the blood test were irrelevant to the charge of impairment under KRS 189A.010(1)(c) because "[t]he quantity of some of the drugs listed ... such as methadone[] are not displayed." Therefore, the toxicology results provided no evidence regarding the degree of impairment. Following a January 9 hearing, the trial court denied this motion.

After this hearing, in preparation for trial, Epperson's trial counsel spoke with Chad Norfleet, the Kentucky State Police Laboratory Specialist who analyzed Epperson's blood sample. During this conversation, both the Commonwealth and counsel for Epperson learned that the control samples[2] used in analyzing Epperson's blood were left sitting in the test instrument for four days prior to being tested. Following this, and following the test of Epperson's blood on the same instruments, the test results did not indicate the levels of two substances, methadone and diazepam; only that both substances were present. On these grounds, prior to jury selection and opening statements, Epperson filed a Supplemental Motion to Suppress, asking the trial court to find the results of the blood test, and Norfleet's testimony regarding them, to be unreliable and inadmissible pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). During a meeting on the eve of trial, the parties discussed this and other

---

1. Kentucky Revised Statutes.

2. Control samples are created and used to measure the accuracy and functionality of a laboratory's instruments during the test of a subject sample. As Norfleet explained at trial, a known quantity of the substance that is the object of the test is placed in the control sample and tested. If the test returns a level of the substance within acceptable range of values nearing the known quantity, the laboratory's instruments are functioning properly and a concurrent test of an actual blood or urine sample is conducted.

pre-trial motions with the trial court in chambers and on the record. The trial court denied the Motion to Suppress.

Also during this pre-trial meeting, seemingly in response to Epperson's Motion to Suppress, the Commonwealth moved to amend the portion of the indictment alleging a violation of KRS 189A.010(1)(d) instead of the original violation under subsection (c) of the same statute. Whereas subsection (c) required the Commonwealth to prove that at least one substance caused Epperson's actual impairment at the time of the accident, the proposed amended charge under subsection (d) required that the Commonwealth prove such a substance was merely present in his bloodstream. Epperson's counsel objected to the Commonwealth's motion; however, the trial court granted it, amended the indictment by hand, and proceeded with jury selection.

The morning after amendment of the indictment, immediately prior to the beginning of proof, counsel for Epperson moved the trial court for a continuance, arguing that the amendment and resulting change in defense strategy prejudiced Epperson's defense and required a continuance under RCr[3] 6.16. Counsel further argued that subsection (d) of the DUI statute violated equal protection because it unjustifiably distinguished between those who had a prescription for certain substances and those who did not. After hearing these arguments, the trial court denied Epperson's Motion to Continue, stating, *inter alia,* "We worked awful hard yesterday getting a jury ... Since we've come this far, we might as well go ahead." Immediately following the denial of the Motion to Continue, the Commonwealth called its first witness. Also, following the denial of the motion, Epperson's counsel informed the defense's expert witness, who was en

route from Ohio, that his services were no longer needed.

During trial, several witnesses testified, including the officers who responded to the accident and administered the field sobriety tests, as well as Norfleet, who testified regarding the toxicological results of Epperson's blood test. Prior to Norfleet's testimony, Epperson's trial counsel renewed his objection to the introduction of the results and Norfleet's testimony regarding them. Once again, the trial court overruled this objection.

Norfleet first testified to the blood sample's chain of custody. He also testified that his test of Epperson's blood sample revealed the presence of four substances: methadone, diazepam, nordiazepam, and oxycodone. The results did not quantify the levels of methadone and diazepam because of the anomaly regarding the control samples. Norfleet stated that he was nonetheless "confident" that methadone and diazepam were present in Epperson's blood. On cross-examination, Norfleet clarified that the tests run by the control samples did not return amounts of methadone and diazepam within the reasonable or acceptable range established by the known quantities present in each; therefore, he did not feel comfortable stating the quantities, only the presence, of those substances.

Also during Norfleet's testimony, he referenced, and the Commonwealth sought to introduce a document of which neither party was aware before trial. What became Commonwealth's Exhibit 23 was a copy of various labels from items contained within the laboratory kit used to test Epperson's blood sample. Among other information, this document showed an expiration date of June 30, 2011, nearly seventeen months

---

**3.** Kentucky Rules of Criminal Procedure.

prior to the accident. Other than his acknowledgement of the document, Norfleet did not address the expiration date in his direct testimony or on cross-examination.

Following trial, the trial court instructed the jury pursuant to the amended indictment, after which the jury found Epperson guilty of second-degree Manslaughter, fourth-degree Assault, and DUI, first offense. For these crimes, the jury recommended, and the trial court ordered, a sentence of six years' imprisonment and fines totaling $1,000. This appeal follows.

### Analysis

Epperson appeals his conviction and sentence on four grounds. He first contends that the trial court abused its discretion in denying his motion for a continuance following amendment of the indictment on the day the trial was scheduled to begin. He also contends that it was an abuse of the trial court's discretion to refuse to suppress the results of the laboratory testing conducted on Epperson's blood, given various information which came to light regarding the test kit and the anomalies which occurred during the testing of his blood. We elect to address these issues first, before addressing Epperson's claims regarding equal protection and, if necessary, cumulative error.

### I. RCr 6.16 and Epperson's Motion to Continue

■■■ RCr 6.16 governs the amendment of an indictment and when a continuance must be granted following an amendment. "RCr 6.16 is a lenient rule which provides for the amendment of an indictment at any time before the verdict and upon a finding that no additional or different offense has been charged and that the substantial rights of the defendant are not prejudiced." *Schambon v. Commonwealth*, 821 S.W.2d 804, 810 (Ky.1991)).

While it is true that RCr 6.16 does not require the Commonwealth to elect, or commit to, a subsection of a statute under which it will prosecute a defendant, *Commonwealth v. Mattingly*, 98 S.W.3d 865, 868 (Ky.App.2002) (citing to *Commonwealth v. Wirth*, 936 S.W.2d 78 (Ky.1996)), it also does not require a defendant to rebut evidence of which he has not been given notice. *Wolbrecht v. Commonwealth*, 955 S.W.2d 533, 537 (Ky.1997). Therefore, the rule itself provides, "[i]f justice requires ... the court shall grant the defendant a continuance when such an amendment is permitted." RCr 6.16.

### A. Standard of Review

■■■ In reviewing Epperson's Motion to Continue, we must remember that whether a continuance is appropriate in any given case is the trial judge's prerogative. *Brutley v. Commonwealth*, 967 S.W.2d 20, 23 (Ky.1998). Therefore, such a decision lies squarely within "the sound discretion of the trial judge, and unless it appears that he has abused that discretion, his determination will not be disturbed on appeal." *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky.1983). Under such a standard, only a ruling which is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" will be overturned. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision ... cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky.2004) (internal citations, emphasis, and quotations omitted).

### B. Prejudice to Epperson's Defense

■■■ Epperson stipulates on appeal that the amendment of the indictment did not

add a new charge against him. That is not the issue in this case. Rather, Epperson contends that justice required the trial court to grant him a continuance following an amendment which fundamentally altered his defense's strategy literally on the eve of trial. Due to the nature of the amendment and the obvious and necessary change in Epperson's defense, we agree that justice required the trial court to grant Epperson's Motion to Continue.

The amendment of the indictment fundamentally prejudiced Epperson's defense. Under the original charge in the indictment, based upon subsection (c) of the DUI statute, the Commonwealth was required to prove impairment. Epperson's various pre-trial pleadings, including his Motion to Continue, establish that his defense was predicated upon his admission that at least one of the substances listed in KRS 189A.010 was present in his bloodstream but that it did not impair his ability to operate a motor vehicle to the degree required under subsection (c). Epperson himself planned to testify to these facts. In addition, his defense employed a poison control expert and a doctor, both of whom were to testify regarding the presence of the substances in Epperson's bloodstream at the time of the accident and the resulting degree of impairment, or lack thereof.

When the trial court amended the charge in the indictment to subsection (d), the mere presence of any of the alleged substances became enough to establish guilt. Hence, on the eve of trial, and ten months after his indictment, Epperson's defense was required to scrap its strategy and send its experts home, as continuing with the strategy and the prepared expert testimony would have resulted in an admission of Epperson's guilt under the DUI statute. This is the very essence of prejudice.

While Epperson does not contest, and we do not take issue with, the trial court's decision to amend the indictment, justice required the trial court to grant Epperson a continuance following the amendment. The trial court's failure to do so, in addition to the court's inadequate justification for immediately proceeding with the trial, constituted an abuse of discretion; and we are compelled to remand the case for a new trial.

## II.  Epperson's Motions to Suppress

Having required that Epperson be given a new trial due to the trial court's failure to grant his Motion to Continue, we must also review the admissibility of the toxicological evidence against him and direct the trial court regarding its handling upon retrial. Of paramount concern is the reliability of Epperson's toxicology test results and the expert testimony which discussed them before the jury.

On appeal, Epperson contends that the errors committed by the laboratory which tested his blood sample raised serious concerns regarding the reliability of that evidence and required the suppression of those results, as well as any expert testimony referencing them, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the Commonwealth contends that this is an improper interpretation of the *Daubert* rule; and we agree.

### A.  Standard of Review

This Court has held that abuse of discretion is the proper standard of review of a trial court's ruling on the admissibility of expert testimony. *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 39 (Ky.2004) (citing to *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky.2000) and *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577–78 (Ky.2000)). The test for abuse of discretion is whether

the trial court's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles. *Goodyear Tire* at 581.

Furthermore, in *Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483, 489 (Ky.2002), *vacated on other grounds by Ford Motor Co. v. Smith*, 538 U.S. 1028, 123 S.Ct. 2072, 155 L.Ed.2d 1056 (2003), the Kentucky Supreme Court noted the considerable breadth of discretion possessed by trial courts in performing their gatekeeping function under KRE 702, and emphasized that a reviewing court must "give great deference to the trial court's ruling and reverse only in circumstances of clear abuse."

### B. The *Daubert* Rule

In *Daubert*, the United States Supreme Court established that the Federal Rules of Evidence (FRE) are the standard by which the admissibility of expert testimony must be determined in federal cases. Looking to FRE 702, the Court held that expert testimony will be relevant, and therefore admissible, if it constitutes "scientific knowledge that ... will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592, 113 S.Ct. 2786. The Court later expanded a trial court's gatekeeping role to encompass not only scientific knowledge and testimony, but also "technical" and "other specialized" knowledge. *See Kumho Tire Company v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (followed by *Goodyear Tire, supra* ).

The *Daubert* Court also stated that expert testimony, in addition to being relevant, must be reliable. 509 U.S. at 589, 113 S.Ct. 2786. The Court set out a nonexhaustive list of factors for trial courts to consider when determining testimony's reliability, including: 1) Whether a theory or technique can be, and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) what the technique's known or potential rate of error is; and 4) whether the theory or technique has gained general acceptance within the scientific community. *Id.* at 593–94, 113 S.Ct. 2786.

Kentucky's Supreme Court, as well as other authorities, has adopted the factors enumerated in *Daubert*. *See Mitchell v. Commonwealth*, 908 S.W.2d 100 (Ky.1995) (*overruled on other grounds by Fugate v. Commonwealth*, 993 S.W.2d 931 (Ky. 1999)). KRE [4] 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
>
> (1) the testimony is based upon sufficient facts or data,
>
> (2) the testimony is the product of reliable principles and methods, and
>
> (3) the witness has applied the principles and methods reliably to the facts of the case.

██ Generally, when a party proffers expert testimony, the trial court must determine in a preliminary hearing—a so-called *Daubert* hearing—whether the expert is indeed proposing to testify to the knowledge meeting the criteria of KRE 702 and KRE 104. *See Goodyear Tire, supra,* at 578 (*citing Daubert, supra,* at 592, 113 S.Ct. 2786). However, a trial court is not always required to conduct such a hearing. Where the knowledge or field to which an expert prescribes or will testify has been previously accepted as

---

**4.** Kentucky Rules of Evidence.

scientifically reliable, it is acceptable for a trial court to recognize them as such without the benefit of a *Daubert* hearing. *See Florence v. Commonwealth,* 120 S.W.3d 699, 703 (Ky.2003). In such circumstances, the trial court may hold a hearing at its discretion, and need not do so unless the opponent of the proffered evidence provides proof that it is unreliable. *Id.*

### Purpose and Scope of Daubert Test

Overall, the function of the *Daubert* rule and the gatekeeping power it bestows upon trial courts is limited to the exclusion of unreliable or "pseudoscientific" testimony which, among other things, cannot legitimately be challenged in a courtroom. *Daubert, supra,* at 592–93, 113 S.Ct. 2786. The rule is not designed or intended to assess the *weight* of the testimony; this role is reserved for the jury. *See Sand Hill Energy, supra,* at 489–90; *see also Branam v. Burger,* 2009 WL 2192637 (Ky.App.2009). In this same vein, while the *Daubert* test was intended to assess the reliability of scientific principles, techniques, or methodologies, it was *not* necessarily intended to critique the manner in which a single test was performed. On the contrary, any alleged deficiencies in testing must go to the weight rather than to admissibility. *Fugate v. Commonwealth,* 993 S.W.2d 931, 935 (Ky. 1999) (*citing United States v. Beasley,* 102 F.3d 1440 (8th Cir.1996)).

### Anomalies in Test of Epperson's Blood

As the basis for his claim that his toxicology results were unreliable under *Daubert,* Epperson cites the undisputed fact that the lab that tested the blood sample mishandled the control samples to which Epperson's blood was compared. Specifically, he cites the fact the delay in testing the control samples and the anomalous results regarding two of the drugs.

However, Epperson does not pose a question of scientific theory, technique, or methodology. He does not assert that testing blood is a scientifically invalid, unfounded, or frequently erroneous method by which to measure the levels of certain drugs in a person's system. Indeed, at no point has Epperson attacked the scientific acceptability or reliability of such a method. Rather, Epperson attacks the manner in which the single test of his blood was conducted. While it can be argued that this constitutes a criticism of the *method* employed in testing Epperson's blood, the record—especially the examination and cross-examination of Norfleet at trial—lacks evidence of a proven defect in Norfleet's method of testing Epperson's blood. Hence, Epperson has not met his burden.

For this reason, Epperson has not met his burden of establishing that the toxicology results lacked reliability. Therefore, like the Supreme Court's conclusion in *Toyota Motor, supra* (holding that it is the general reliability and acceptability of using comparable airbags in the testing of airbags with which *Daubert* is concerned, not the choice of airbags a single tester made in conducting a single test), we hold that criticism of Norfleet's handling of the control samples during testing of Epperson's blood sample "goes to the weight of the evidence, not its admissibility." 136 S.W.3d 35, 40–41 (Ky.2004).

While we have already remanded for a new trial on this matter, we hold that *Daubert* does not prevent the inclusion of the toxicology reports and expert testimony regarding them if and when Epperson is retried. The fault Epperson finds with the manner in which his blood was tested can be adequately addressed on cross-examination and is properly reserved for the trier of fact who will assign it its proper weight.

### III. KRS 189A.010(1)(d) and Equal Protection

█ Epperson next argues that KRS 189A.010 violates the requirement of equal protection of the laws due to its provision concerning those who have a prescription for the substances found in their system while operating a motor vehicle. We are not persuaded.

KRS 189A.010(4) states, "the fact that any person charged with violation of subsection (1) of this section is legally entitled to use any substance, including alcohol, shall not constitute a defense against any charge of violation of subsection (1) of this section. KRS 189A.010(4)(a). The portion of the statute which Epperson paints as offending equal protection merely adds, "[a] laboratory test or tests for a controlled substance shall be inadmissible as evidence in a prosecution under subsection (1)(d) of this section upon a finding by the court that the defendant consumed the substance under a valid prescription from a practitioner. . . ."

█ The Fourteenth Amendment to the United States Constitution, as well as Section 59 of Kentucky's Constitution, prohibits a state from passing a law which treats similarly-situated individuals differently. If it is found that a law does so, it must then be determined what standard of scrutiny is to be applied to that law upon review and also whether the law serves a valid governmental purpose which withstands that scrutiny. *See Commonwealth, ex rel. Stumbo v. Crutchfield,* 157 S.W.3d 621 (Ky.2005). As alleged in Epperson's case, KRS 189A.010 "does not operate to the disadvantage of a suspect class, and no fundamental right is unduly prejudiced. Consequently, a rational basis standard and not a strict scrutiny test must be used to assess the constitutionality of the statute." *Commonwealth v. Howard,* 969 S.W.2d 700, 703 (Ky.1998).

█ Under the rational basis test, a legislative classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Howard,* at 703 (citing to *Heller v. Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). In other words, the statute, and the classification of persons it allegedly makes, must "rationally further a legitimate state interest." *Id.* (citing *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)).

In light of established equal protection analysis, we find fault with every level of Epperson's argument regarding KRS 189A.010. First, based on the very clear language of the statute, we disagree with Epperson's contention that the statute creates two "similarly-situated" classes of individuals and treats them differently in the eyes of the law. Contrary to Epperson's assertions, the statute does *not* provide a blanket of immunity for those with a prescription; it merely subtracts a single item of admissible evidence from the Commonwealth's arsenal of evidence. Other means of proving impairment or the presence of substances in a driver's system remain at the Commonwealth's disposal. In short, KRS 189A.010(4) does not constitute disparate treatment.

Assuming, *ad arguendo,* that KRS 189A.010(1)(d) treated similarly-situated drivers differently before the law, the Commonwealth's interest in protecting the public constitutes a rational basis for such treatment. This Court has addressed a similar argument against the Criminal Code's punishment of drivers under eighteen who commit DUI and those between the ages of eighteen and twenty-one who commit the same offense. *Praete v. Commonwealth,* 722 S.W.2d 602 (Ky.App.1987).

Quoting the trial court's order in that case, we held that

> While it is true that individuals between the ages of eighteen and twenty-one cannot legally purchase alcoholic beverages in Kentucky, under KRS 2.015 they are deemed to be adults for all other purposes unless they are handicapped. Those between the ages of sixteen and eighteen, on the other hand, are still deemed to be minors and the legislature may reasonably regard them as a class requiring closer supervision than those over the age of eighteen. More importantly, the legislature may properly decide that members of the general public are entitled to greater protection from those minors who have demonstrated a lack of maturity in both the consumption of alcohol and the operation of a motor vehicle upon the highways of the state.

*Id.* at 603.

The implication behind the provision of KRS 189A.010(4)(b) is that the individual who obtains a substance through a doctor's prescription is under a doctor's professional supervision regarding the consumption of that substance. A person who obtains medicine illicitly, presumably, is not and very well could be using that substance in unsafe amounts and in combination with other substances which would more significantly impair his ability to drive. This fact alone creates a rational basis for KRS 189A.010(4)(b)'s provision. Therefore, the statute does not violate equal protection.

### Conclusion

We hold that the trial court did not err in admitting into evidence the results of, and expert testimony regarding, Epperson's blood analysis. However, due to significant impact upon the Epperson's defense's strategy that amendment of the indictment created, justice required the trial court to grant Epperson's Motion to Continue. The trial court's failure to do so constituted an abuse of discretion and requires remand for a new trial.

Finally, because we have found error in the trial court's handling of Epperson's Motion to Continue, we do not take up his argument regarding cumulative error. Therefore, the order of the Powell Circuit Court is affirmed in part, reversed in part, and remanded for a new trial.

ALL CONCUR.