Ronald Douglas **CRAWLEY**, Appellant,

v.

**COMMONWEALTH of Kentucky**, Appellee.

No. 2001–SC–0002–MR.

Supreme Court of Kentucky.

June 12, 2003.

John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Anitria M. Franklin, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice STUMBO.

Appellant, Ronald Douglas Crawley, was convicted in the Fayette Circuit Court of first-degree robbery and of being a first-degree persistent felony offender (PFO) for participating in the armed robbery of Thee Clubhouse, an adult dancing establishment in Lexington, Kentucky. Appellant was sentenced to twenty-five years imprisonment and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Appellant advances four issues on appeal, namely that: (1) he was improperly denied his right to testify on his own behalf; (2) the jury instructions for complicity to robbery did not include the element of intent; (3) he was effectively denied the ability to call a witness to testify about a co-conspirator's motive to lie; and (4) the Commonwealth failed to provide notice of its intention to introduce evidence of Appellant's prior bad acts pursuant to KRE 404(c). We reverse and remand because the trial court did not sufficiently determine that Appellant's waiver of his right to testify on his own behalf was knowingly and intelligently made.

## I. DENIAL OF APPELLANT'S RIGHT TO TESTIFY ON HIS OWN BEHALF

At the close of the defense case, Appellant's counsel approached the bench and moved for a directed verdict. The trial court denied the motion and asked if, before closing arguments began, counsel would like to put on the record that Appellant was aware he had the right to testify on his own behalf but that he was waiving such right. Counsel responded that she did not wish to do so because Appellant wanted to testify but she had not allowed

him to take the stand. Again, during closing arguments, counsel told the jury that they were not to hold against the defendant the fact that he did not testify because he had in fact wanted to, but she would not allow it.

■ The right of a defendant to testify on his own behalf is firmly established by the Fifth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution. *See also Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Further, the Sixth Amendment to the United States Constitution . . .

> grants to the accused *personally* the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor."

*Id.* at 52, 107 S.Ct. at 2709, 97 L.Ed.2d at 46–47 (quoting *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, 572 (1975)). "As a constitutional right 'essential to due process of law in a fair adversary process,' a defendant's waiver of the right to testify must be knowing and intelligent." *United States v. Pennycooke,* 65 F.3d 9, 11 (3d Cir.1995) (citations omitted). Although trial courts are not generally required to advise a defendant that he has a right to testify, there are certain circumstances, as in the case at bar, where a direct colloquy with a defendant is necessary to protect his constitutional right to testify at his own trial. *Pennycooke, supra* at 12. The *Pennycooke* court held in relevant part:

> [w]here, in furtherance of trial strategy, defense counsel nullifies a defendant's right to testify over the defendant's protest, the defendant clearly has been denied the right to testify. In such a case, it may be advisable that the trial court inquire discreetly into the disagreement and ensure that constitutional rights are not suppressed wrongly.

*Id.* at 13.

■ This Court examined the reasoning of the *Pennycooke* court in our opinion in *Riley v. Commonwealth,* Ky., 91 S.W.3d 560 (2002). There, however, we noted that "the trial court was aware only that [Riley] was dissatisfied with the representation he received, but the court had no indication that [Riley's] attorney frustrated his desire to testify." *Id.* at 562. The facts are different here. Although Appellant here did not protest his counsel's decision to keep him from testifying, the trial court knew that Appellant wanted to testify but was kept from the stand by defense counsel. Since the court was aware of the conflict, it had a duty to further inquire into the situation. When the trial court failed to do so, it failed to insure that Appellant's silence was the result of a knowing and intelligent waiver of his right to testify and such was error. Therefore, we hold that a trial court has a duty to conduct further inquiry when it has reason to believe that a defendant's waiver of his right to testify was not knowingly or intelligently made or was somehow wrongly suppressed.

## II. JURY INSTRUCTIONS ON COMPLICITY TO ROBBERY

Appellant contends that the jury instructions did not require the jury to find that Appellant, as an accomplice, intended that the principal commit robbery. Instruction No. 3, under which Appellant was convicted, states:

> You will find Defendant, Ronald Crawley, guilty of First–Degree Robbery un-

der this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about the 28th day of February, 2000 and before the finding of the Indictment herein, he, alone or in complicity with another, stole money from Angie Sullivan, an employee of Thee Clubhouse.

B. That in the course of doing so and with intent to accomplish the theft, he, alone or in complicity with another used or threatened the immediate use of physical force upon Angie Sullivan, an employee of Thee Clubhouse. AND

C. That when he did so, he, alone or in complicity with another was armed with a gun.

■ Robbery requires not only the element of an intent to accomplish a theft, but also the element of the use or threat of immediate use of physical force upon the victim. KRS 515.020(1)(c). Thus, the instruction also should have required that Appellant, as an accomplice, intended that the principal use or threaten the immediate use of physical force upon the victim. Often, this element of intent is satisfied by giving a separate instruction defining complicity. However, the instructions used in this case defined complicity as:

> Complicity means that a person is guilty of an offense committed by another person when, *while acting recklessly with regards to another's conduct,* he solicits, commands, or engages in a conspiracy with such other person to engage in that conduct, or aids, counsels, or attempts to aid such person in planning or committing such conduct.

(Emphasis added).

The instructions therefore erroneously failed to require that Appellant intended that the principal commit the robbery. *Harper v. Commonwealth,* Ky., 43 S.W.3d 261, 263–265 (2001). Appellant concedes this issue is not preserved; we address it merely because the issue may occur upon remand. We note that a better instruction defining complicity would read:

> A person is guilty of an offense committed by another person when, *with the intention of promoting or facilitating the commission of the offense,* he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

KRS 502.020(1)(a) and (b) (emphasis added).

## III. CROSS–EXAMINATION OF APPELLANT'S WITNESS ADAM BREWSTER

Appellant intended to call Adam Brewster to testify about William Searight's (Appellant's co-conspirator) possible bias against Appellant. Appellant would have asked Brewster to testify that Searight had made statements to him while the two were in prison together that indicated Searight was "out to get" Appellant because of his relationship with Angela Banta, thus giving Searight a motive to lie in his testimony against Appellant at trial. The Commonwealth argued that if Brewster were called to testify it should be allowed to ask Brewster on cross-examination if he thought there were any other reasons that Searight might dislike Appellant. Brewster testified on avowal that he thought Searight could be angry (and that hypothetically he himself would be angry) at Appellant because Searight had received a twenty-year sentence in connection with the robbery. However, Brewster would not have testified to any direct statements made to him by Searight regarding this matter. As a result of the trial court's ruling that the Commonwealth would be allowed to cross-examine Brewster on this

issue, Appellant chose not to call Brewster as a witness. However, avowal testimony pursuant to RCr 9.52 was taken from Brewster.

In *Hayes v. Commonwealth*, Ky., 58 S.W.3d 879 (2001), we addressed a similar situation. There, the defendant who was charged with rape claimed to have been precluded from testifying at his trial by an erroneous evidentiary ruling made by the trial court. Specifically, the trial court ruled that should the defendant take the stand and testify that sexual contact with the complaining witness was consensual, the Commonwealth could use evidence of a prior conviction of misdemeanor sexual assault for impeachment purposes. The defendant chose not to testify and no avowal testimony was taken. This Court made a broad ruling that an alleged error of denial of the right to testify by implication can only be preserved by the defendant taking the stand. Avowal is insufficient. *Hayes, supra* at 882.

While the *Hayes* case involved the testimony of a defendant as opposed to a defense witness, we believe the reasoning therein to be sound when applied to this case. It is only when the complained of testimony is considered in light of the record of the entire trial that its impact can be judged. *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Because Appellant's witness, Brewster, did not testify, the alleged error is not preserved and will not be addressed.

## IV. INTRODUCTION OF PRIOR BAD ACTS INTO EVIDENCE

It is also not necessary to address Appellant's contention that the Commonwealth failed to provide notice of its intention to introduce evidence of Appellant's prior bad acts as required by KRE 404(c). For purposes of retrial, Appellant now has notice of the Commonwealth's intention to introduce such evidence.

## V. CONCLUSION

For the reasons set forth herein, the judgment of the Fayette Circuit Court is reversed and the case is remanded to said court for a new trial.

LAMBERT, C.J.; COOPER, GRAVES, and JOHNSTONE, JJ., concur as to Issue I.

COOPER, J., concurs by separate opinion as to Issue I, with GRAVES, J., joining that opinion.

KELLER, J., dissents by separate opinion as to Issue I.

WINTERSHEIMER, J., dissents by separate opinion as to Issue I.

All concur as to Issue II.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, and KELLER, JJ., concur as to Issue III.

COOPER, J., concurs by separate opinion as to Issue III, with GRAVES, and JOHNSTONE, JJ., joining that opinion.

WINTERSHEIMER, J., concurs in result only as to Issue III.

STUMBO, J., dissents by separate opinion as to Issue III.

All concur as to Issue IV.

Concurring Opinion by Justice COOPER.

## I. DENIAL OF RIGHT TO TESTIFY.

*Jacobs v. Commonwealth*, Ky., 870 S.W.2d 412 (1994), held that, assuming mental competency to make such a decision, a defendant is "the master of his own defense and pilot of the ship." *Id.* at

418. Counsel may have had good reasons for believing that Appellant should not take the stand in his own defense. However, her duty was to give Appellant her reasoned advice. The decision whether to accept or reject that advice ultimately belonged to Appellant—assuming his proposed testimony would not have been perjurious. *United States v. Curtis,* 742 F.2d 1070, 1076 (7th Cir.1984) ("[A] defendant's personal constitutional right to testify truthfully in his own behalf may not be waived by counsel as a matter of trial strategy.... It is equally clear, however, that a defendant has no constitutional right to testify perjuriously in his own behalf."). Once the trial judge was informed of Appellant's desire to testify, it was error to fail to inquire as to the accuracy of that information and, if accurate, to permit Appellant to testify. *Ortega v. O'Leary,* 843 F.2d 258, 261–62 (7th Cir. 1988). Although *Ortega* found the error to be harmless because Ortega's proposed testimony would have been cumulative of that of other witnesses, *id.* at 262, we, of course, do not know what Appellant's testimony would have been. (*Ortega* was an appeal from a denial of a petition for a writ of habeas corpus.) Regardless, my view is that the right of a defendant to testify in his own behalf is so important as to withstand any "cumulative evidence" analysis.

Apart from what appellant would have testified to, his presence on the stand would have afforded him the opportunity to have the jury observe his demeanor and judge his veracity firsthand. As one Circuit Judge has noted, "The facial expressions of a witness may convey much more to the trier of facts than do the spoken words."

*United States v. Walker,* 772 F.2d 1172, 1179 (5th Cir.1985) (*quoting United States v. Irvin,* 450 F.2d 968, 971 (9th Cir.1971) (Kilkenny, J., dissenting)).

Nor do I agree that this case should be remanded for a retrospective hearing on voluntary waiver. Appellant's attorney has already told the trial judge that Appellant wished to testify but that she would not allow him to take the stand. I cannot imagine Appellant testifying to the contrary on remand.

## II. CROSS–EXAMINATION OF BREWSTER.

I agree with the *Hayes* analysis in the majority opinion. *Hayes v. Commonwealth,* Ky., 58 S.W.3d 879 (2001). However, because this case is being remanded for a new trial, I would further note that the trial judge's ruling on the proposed cross-examination of Brewster was incorrect. Brewster's testimony in response to the Commonwealth's proposed rehabilitation of Searight's credibility, as preserved by avowal, would have been as follows:

Q. Were you aware that Mr. Searight went to prison for twenty years because of Mr. Crawley's statements?

A. No, ma'am.

Q. That would make you not like someone very much, wouldn't it?

A. Yes, ma'am.

Thus, Brewster's testimony would not have been that Searight had expressed animosity towards Appellant because Appellant's statements to the police had caused Searight to receive a twenty-year prison sentence. (In fact, no foundation had been laid for such testimony. KRE 613(a).) Brewster would have testified only that he, himself, "would ... not like someone very much" whose statements to the police had caused him to receive a twenty-year sentence. Of course, Brewster's hypothetical animosity was not in issue. Thus, it was irrelevant, and the attempted rehabilitation should have been suppressed for that reason alone.

Furthermore, this alleged rehabilitation was, in fact, only additional impeachment. Searight had other reasons in addition to jealousy for testifying against Appellant. Of course, the Commonwealth's real reason for this proposed inquiry was to inform the jury that Searight had received a twenty-year sentence for his participation in these crimes, *ergo*, Appellant should receive the same sentence. Searight did not even know that Appellant had received a twenty-year sentence. Thus, even if relevant, the probative value of this evidence was substantially outweighed by its undue prejudice. KRE 403.

Accordingly, I concur only in the result reached by the majority opinion in this case.

GRAVES J., joins this concurring opinion.

JOHNSTONE, J., joins this concurring opinion as to Part II (Issue III in the majority opinion) only.

Dissenting opinion by Justice KELLER.

I agree with the majority that "a trial court has a duty to conduct further inquiry when it has reason to believe that a defendant's waiver of his right to testify was not knowingly or intelligently made or was somehow wrongfully suppressed."[1] And, as to the case at bar, I agree that Appellant's trial counsel's in-court representations suggested that counsel "might be overriding the defendant's decision to take the stand,"[2] and thus demonstrated "exceptional circumstances" under which the trial court should have inquired further into whether Appellant had knowingly and voluntarily waived his right to testify. I dissent from the result reached by the majority, however, because I disagree with

the majority's conclusion that this error mandates reversal and remand for a new trial. Quite simply, I can find no authority to support the view that, in a jurisdiction like Kentucky that applies the general "no inquiry" rule, per se reversible error results whenever a trial court erroneously fails to conduct an on-the-record colloquy (required by "extraordinary circumstances" present in the case) as to whether the defendant knowingly and voluntarily waived his right to testify. In fact, I have not found a single case—not in Appellant's briefs, not in the majority opinion, and not in my own research—where an appellate court, presented with this issue in this procedural posture, reversed a criminal conviction.

It appears that the majority has taken at face value Appellant's trial counsel's statements to the effect that Appellant wanted to testify, but that she would not allow him to do so. Although counsel's statements certainly could be interpreted literally—i.e., that counsel willfully obstructed her own client's constitutional right to decide for himself whether to testify and then decided to broadcast her professional misconduct both at a bench conference and again before the jury during closing argument—I find it exceptionally hard to believe that, although both the trial judge and the Assistant Commonwealth Attorney were present, neither's interest was at all piqued by these bold declarations. This suggests to me that, in context, trial counsel's statements may have been intended, and understood, other than literally. Specifically, I recognize the possibility that counsel's "I'm not going to let him testify" declaration may have been merely an extremely poor choice of words

---

**1.** *Majority Opinion,* 107 S.W.3d 197, 199 (2003).

**2.** *United States v. Ortiz,* 82 F.3d 1066, 1071 (D.C.Cir.1996), *citing United States v. Pennycooke,* 65 F.3d 9, 12–13 (3rd Cir.1995).

to communicate in shorthand that counsel had discussed Appellant's rights with him, and that, although Appellant had initially wanted to "tell his side of the story," Appellant was persuaded, and himself decided, not to testify after counsel discussed with him the costs and benefits of taking the stand.[3] If this is the case, and despite counsel's representations, Appellant actually did knowingly and voluntarily elect not to testify, then the only thing that Appellant was "deprived of" is the colloquy in which Appellant would have confirmed his waiver before the trial court. If so, the majority grants Appellant a windfall of epic proportions when it reverses his conviction and grants him a new trial.

Accordingly, instead of reversing the judgment of the Fayette Circuit Court and remanding this indictment for a new trial, I would vacate the judgment, and remand this case to the trial court for an evidentiary hearing to determine whether Appellant knowingly and voluntarily waived his right to testify at his prior trial. Following this hearing, if the trial court either determines that Appellant did not knowingly and voluntarily waive his right to testify or is, for any reason, unable to make a determination, Appellant should receive a new trial. However, if the trial court finds that Appellant knowingly and voluntarily waived his right to testify, it should reinstate the judgment, and Appellant should be permitted to seek appellate review of the trial court's finding.

I agree with both the majority's conclusion that the trial court's jury instructions

as to First–Degree Robbery were erroneous and its statement that the allegation of error as to those instructions, which Appellant did not preserve by contemporaneous objection and which is not a palpable error that would justify relief under RCr 10.26, warrants discussion "merely because the issue may appear upon remand."[4] For the record, I disagree with the majority opinion's suggestion that the "better instruction defining complicity" it proposes is a panacea for this error. I have argued on prior occasions that "definitional instructions" that duplicate or replace other instructions containing the substantive elements of criminal offenses not only confuse juries[5] but also may create the risk of a non-unanimous verdict if the trial court does not tailor its "definition" to the proof at trial.[6] Accordingly, I would suggest that, instead of utilizing a different, standalone complicity definition in its instructions, the trial court could cure the error by correctly incorporating KRS 502.020(1) "complicity to the act" culpability within its substantive instruction as to First–Degree Robbery.[7]

Dissenting Opinion by Justice STUMBO.

Chief Justice Lambert's concurring opinion in *Hayes v. Commonwealth,* Ky., 58 S.W.3d 879 (2001), pointed out that the majority overruled relatively recent precedent *sua sponte,* even though it was not necessary to do so to resolve the issue. *Mathews v. Commonwealth,* Ky., 997 S.W.2d 449 (1999), became final little more

**3.** I observe that Appellant's First–Degree Robbery conviction was enhanced as a result of his First–Degree Persistent Felony Offender (PFO) status, so one (1) possible opportunity cost of taking the stand and testifying would be the probability of impeachment as a convicted felon. *See* KRE 609.

**4.** *Majority Opinion, supra* note 1 at 200.

**5.** *Tharp v. Commonwealth,* Ky., 40 S.W.3d 356, 369–370 (2001) (Keller, J., concurring).

**6.** *Commonwealth v. Whitmore,* Ky., 92 S.W.3d 76, 83 (2003) (Keller, J., concurring).

**7.** *Ray v. Commonwealth,* Ky., 550 S.W.2d 482, 484–5 (1977).

than a year before this trial was held. Defense counsel followed the procedure set forth in that opinion when he placed avowal testimony into the record. The error alleged was preserved and remained so until October of 2001, when *Hayes* was decided, some three months after Appellant's initial brief was filed. We should review this issue on the merits rather than foreclosing it procedurally, particularly since we have already ordered the case reversed for a new trial. Judicial economy, at minimum, demands it.

A review of the avowal reveals that it meets the standard we set in *Mathews*: it contains the substance of the witnesses' testimony and is sufficient for the Court to determine the correctness of the trial court's ruling.

I would hold that the trial court erred in ruling that Brewster could be cross-examined to elicit speculation about another witness' possible motives to testify as he did.

KRE 611(b) states that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Further, the scope of cross-examination rests in the sound discretion of the trial court. *Moore v. Commonwealth*, Ky., 771 S.W.2d 34, 38 (1988). Although Kentucky recognizes a "wide open" cross-examination, there remain some limitations. In *Commonwealth v. Maddox*, Ky., 955 S.W.2d 718, 721 (1997), this Court held that there must be some connection between the proposed cross-examination and the facts that are in evidence. Here, Brewster was not being asked to testify to statements made to him by Searight. Rather, he was being asked to speculate as to other possible motives Searight may have had to testify against Appellant. There are facts in the evidence that support Appellant's contention that Searight may have disliked Appellant because of

Angela Banta. There is no evidence in the record to support any other theories as to why Searight might have disliked Appellant. Further, even if there were, Brewster's opinion of whether Searight might have been upset with Appellant for receiving a twenty-year sentence was irrelevant. Therefore, I would hold that the trial court abused its discretion when it held that the Commonwealth could cross-examine Brewster on this matter. Appellant was effectively denied due process of law when he was prevented from calling Brewster to help establish that Searight, a material witness against Appellant, had a motive to lie.

Dissenting Opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because the trial judge did not have an absolute blanket duty to inquire into the disagreement as to the tactical decision to refuse to allow the accused to testify.

Appellate counsel for Crawley admits that this issue is not properly preserved for appellate review by means of an objection. Trial counsel told the trial judge that there was no need to inquire about whether the defendant wanted to testify. Crawley does not contend that he was not advised that he had a right to testify. If he believes that his lawyer did not properly counsel him, then he should pursue other avenues of relief.

The claim of an involuntary waiver of the right to testify is not clearly supported by the record. Even the authority relied on by the majority does not mandate an automatic inquiry by the trial judge. *United States v. Pennycooke*, 65 F.3d 9 (3d Cir.1995) states that, "In such a case, *it may* be advisable that the trial court inquire discreetly into the disagreement and ensure that constitutional rights are not

suppressed wrongly." *Id.* at 13. (Emphasis added).

The mild advisory admonition of *Pennycooke, supra,* clearly shows a deference to the sound discretion of the trial judge. We should not interfere with it in this case.