David DELACRUZ, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–CA–001312–MR.

Court of Appeals of Kentucky.

Oct. 8, 2010.

Ed Monahan, Public Advocate, Linda Roberts Horsman, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER and THOMPSON, Judges; HARRIS,[1] Senior Judge.

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

*OPINION*

HARRIS, Senior Judge:

David Delacruz appeals from his Graves Circuit Court conviction on the charge of complicity to trafficking in marijuana greater than 5 pounds and sentence of 5 years imprisonment. Delacruz requests reversal based upon the following claimed errors: (1) that the trial court erred by denying his motion to suppress an incriminating statement which he asserts was given in violation of his *Miranda* rights; (2) that the trial court erred by permitting the Commonwealth to peremptorily strike a juror based upon the juror's ethnicity; and (3) that the jury was improperly instructed. After a careful review of the record and briefs, we conclude that the trial court erred in its denial of Delacruz's motion to suppress. Therefore, we reverse.

On August 24, 2007, Detective Michael Williams learned that a box containing marijuana was en route to a residence located in Mayfield, Kentucky. Detective Williams intercepted the package at Fed Ex and presented it to a drug detecting dog. The dog alerted on the package, indicating the presence of a controlled substance. Pursuant to a search warrant, Detective Williams opened the box and found over fourteen pounds of marijuana. Detective Williams resealed the box and prepared to execute a controlled delivery.

Detective Williams donned a Fed Ex uniform and drove a van labeled "Fed Ex" to the residence where the package was addressed. Laura Ladd received the package and was immediately arrested. Ladd told the officers that she had been paid to receive a package for Gabino Lopez. She told the officers that Lopez instructed her to call the owner of the residence, Delacruz, when the package arrived.

Delacruz was later questioned by the police. Initially, he denied any knowledge but later admitted that he knew that the package was being delivered for Lopez. Delacruz claimed, however, that he believed that the box contained car parts.

Ladd, Lopez, and Delacruz were all indicted on two counts of trafficking in marijuana greater than five pounds. Delacruz was convicted on both counts of the indictment. However, the trial court granted a judgment notwithstanding the verdict on one count of trafficking.[2] On July 7, 2009, Delacruz was sentenced to 5 years imprisonment on the remaining conviction. This appeal follows.

## I. The *Miranda* Rights Violation

▮▮▮ A suspect must be informed of his right to remain silent and his right to an attorney prior to a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These rights are known collectively known as "*Miranda* rights" or "*Miranda* warnings." The Commonwealth must prove by a preponderance of the evidence that the defendant waived these *Miranda* rights. *Mills v. Commonwealth,* 996 S.W.2d 473, 482 (Ky.1999); *McCloud v. Commonwealth,* 286 S.W.3d 780 (Ky.2009). Although we must "presume that a defendant did not waive his rights[,]" waiver can be shown "from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The waiver must be executed knowingly and voluntarily. *Mills,* 996 S.W.2d at 482. The person waiving his rights must understand the

---

**2.** The count of the indictment concerning which the trial court granted judgment notwithstanding the verdict charged a separate offense allegedly to have occurred on August 8, 2007.

nature of the right being waived and the potential consequences of the waiver. *Id.* The Commonwealth failed to show that Delacruz understood these rights.

■ A portion of the audio recording of the interrogation was played during the suppression hearing. The recording contains this exchange between Detective Williams and Delacruz:

Detective Williams: Let me first read you your rights. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney before making any statements. You may have your attorney with you before making any statements. Or you can answer questions with your attorney with you. If you can not afford an attorney, the court will appoint one for you. Do you understand that you don't have to answer any questions, whatsoever, that I ask? Or answer any questions?

Delacruz: (inaudible)

Detective Williams: That's just it. Do you understand that you don't have to make any statements or answer any questions?

Delacruz: Well, I don't understand what you are talking about.

Detective Williams: Yes or no. Do you understand that you don't have to answer any of my questions? If I ask you a question do you understand that you don't have to answer it . . . if you do not want to?

Delacruz: I don't know what kind we are talking about here?

Detective Williams: Don't wonder about the kind I am going to ask you. Wonder if . . . Do you understand that if I ask you a question about anything, you don't have to answer if you don't want to? Do you understand that much?

Delacruz: I want to answer whatever you want. Anything you want, I want to answer.

Detective Williams: But you do understand that you don't have to if you don't want to? That's right. That's good. So you do understand? [3]

The recording demonstrates that Detective Williams attempted to assure that Delacruz understood that he had the right to remain silent. However, after Delacruz was initially advised of his *Miranda* rights, he indicated that he did not understand. Rather than rereading the rights, describing each individual right, or providing Delacruz with rights written in Spanish, Detective Williams only asked if he understood that he did not have to answer questions. That explanation is incomplete and insufficient. Detective Williams never ascertained that Delacruz understood all of his *Miranda* rights.

Absent a showing by the Commonwealth by a preponderance of the evidence that Delacruz understood all of his *Miranda* rights, including his rights with respect to counsel, any waiver of rights by Delacruz was not knowingly and intelligently made, and should have been suppressed.

The trial court's failure to suppress these statements requires us to reverse and remand this case for a new trial with directions to the trial court to suppress Delacruz's statements.

## II. The *Batson* Challenge

The second issue raised by Delacruz concerns the Commonwealth's peremptory strike of a juror with a Hispanic surname. Since we are remanding this case for a new trial and this issue is unlikely to reoccur, we will not address it further, except

---

**3.** No audible answer to this final question was disclosed at the suppression hearing.

to observe that we believe the trial court did not err. *See Stanford v. Commonwealth,* 793 S.W.2d 112, 114 (Ky.1990).

### III. The Jury Instructions

■ Lastly, Delacruz claims that the jury was improperly instructed on the charge of complicity to trafficking in marijuana greater than 5 pounds. Because it is likely that this issue will arise upon retrial, we will address it.

The jury instruction failed to require the jury to find that Delacruz intended for the marijuana to be sold. However, in *Crawley v. Commonwealth,* 107 S.W.3d 197 (Ky. 2003), the Kentucky Supreme Court held that such a failure may be cured by an adequate instruction defining complicity. *Id.* at 200. The complicity instruction provided:

> Complicity—means that a person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits commands or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

The complicity instruction which the trial court gave accords with *Crawley.* Therefore, we find no error in the instructions.

Accordingly, we reverse and remand this case to the Graves Circuit Court for a new trial to be conducted in accordance with this opinion.

KELLER, Judge, concurs.

THOMPSON, Judge, dissents and files separate opinion.

THOMPSON, Judge, dissenting:

I respectfully dissent from the majority opinion because I believe there was substantial evidence to support the trial court's factual findings and, therefore, we are required to affirm.

The voluntariness of the incriminating statements depends upon the totality of the circumstances surrounding the statement and presents a question of fact. *Mills v. Commonwealth,* 996 S.W.2d 473, 481 (Ky.1999). The applicable standard of review is concisely stated as follows:

> If supported by substantial evidence, the factual findings of the trial court shall be conclusive. When the findings of fact are supported by substantial evidence ... the question necessarily becomes, whether the rule of law as applied to the established facts is or is not violated. The second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law. However, a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

*Olden v. Com.,* 203 S.W.3d 672, 676 (Ky. 2006) (internal quotations and citations omitted).

Detective Williams read Delacruz his Miranda rights and was convinced that Delacruz understood his right to remain silent. He testified that he was able to converse with Delacruz in English and proceeded to question him only after Delacruz confirmed that he knew he was not required to answer the officer's questions. Additionally, Delacruz's neighbor testified that although Delacruz was not fluent in English, he understands more English than he reveals and understands what is said when repeated more than once.

Because I believe that the trial court's finding that Delacruz understood his Mi-

randa rights is supported by substantial evidence, I would affirm.