RENDERED: MARCH 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0022-MR

DONALD M. LYNCH                                         APPELLANT

                  ON APPEAL FROM OHIO CIRCUIT COURT
V.              HONORABLE THOMAS O. CASTLEN, SPECIAL JUDGE
                            NO. 18-CR-00219

COMMONWEALTH OF KENTUCKY                         APPELLEE

## OPINION OF THE COURT BY JUSTICE LAMBERT

### AFFIRMING

Donald Lynch (Lynch) was found guilty of first-degree rape, murder, abuse of a corpse, first-degree trafficking in a controlled substance, and tampering with physical evidence. He was sentenced to life in prison without parole after the jury found he committed murder during the commission of rape. He now appeals the resulting sentence as a matter of right.[1] After review, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Amanda Riley (Amanda) took her daughter to the doctor on the morning of December 16, 2016. Amanda's mother, Sharon Ellis (Ellis), gave Amanda the child's insurance card before she left. Amanda stopped by the house of her

---

[1] Ky. Const. § 110(2)(b).

estranged husband, Heath Riley (Heath), to get the child's health-care debit card. They argued, he refused to give it to her, and she left. Amanda then took her daughter to the doctor, returned home, left again to run some errands, and then returned home again. Amanda left home once more that evening. Ellis did not see who had picked her up.

Amanda's body was found floating in the waters of the Peabody Wildlife Management Area early the next morning by a trapper. Her daughter's insurance card was discovered in her pocket after police retrieved her body from the water. The insurance card led police to Heath, who identified her body. Amanda's cell phone and a pack of cigarettes were located at the top of a boating ramp near where her body was discovered.

Police notified Ellis that Amanda had died. While the police were still at Ellis's home, Amanda's boyfriend, Joshua Estep (Estep), called Ellis because he was concerned that he had not heard from Amanda. Ellis informed him that Amanda had died. Estep was in Florida at the time. He belonged to a local chapter of a motorcycle club.

Police immediately started investigating the details of Amanda's life. Lynch's name came up several times during the course of their investigation. One of Amanda's friends provided police with Lynch's phone number. Lynch's phone number was in Amanda's phone under the name "Matt Dodge."

Amanda's cellphone contained text messages between the two. She had texted Lynch early on the evening of the 16th and asked him if he had

2

methamphetamine, and offered him gas money if he would come pick her up. Lynch texted Amanda when he arrived at her house. Lynch had deleted the texts between him and Amanda and had attempted to delete all other data from his cell phone, including a text message from James Johnson, which said "hope you ain't been out at your usel [sic] nighttime hangout in the last couple days."

Lynch gave a statement to police several days after Amanda's death. He claimed that he and Amanda had been together on the night she died, but that he had smoked methamphetamine with her and then left her in the middle of the road, though he was not certain where.

An autopsy was performed on Amanda's body. She died from blunt force trauma to the head. She had lacerations to her scalp, bruising and contusions on her arms, and broken bones in her right arm and hand. Post-mortem testing revealed that Amanda had methamphetamine in her blood. The examiner also completed a rape kit, which revealed that Lynch's DNA was present. Subsequent testing performed on Lynch's clothing would show that Amanda's blood was present on Lynch's right shoe.

Cell location data analysis was completed on Lynch and Amanda's cellphones. The data reflected that Lynch and Amanda's cellphones were in close proximity for much of the night. Between 7:30 p.m. and 9:00 p.m. Lynch's phone left the wildlife management area. Amanda's did not leave the area, and her phone did not move at all for the remainder of the night.

3

In January 2017, about a month after the murder, Joseph Cox (Cox) was walking along Rochester Road—which runs near the Peabody Wildlife Management Area—when he found a purse under a bridge. Cox testified that when he found it, the purse was soaking wet and he put it on a sheet to dry and waited until the next day to go through it. Cox found Amanda's identification in the purse, and, after recognizing her name from the news, notified the police. He did so not by calling the police, but instead by riding around in search of a patrol car. He stopped for food and saw a Kentucky State Trooper nearby. He gave the purse to police at that time.

The Commonwealth theorized that Lynch had raped Amanda, she got out of his truck, and then he murdered her. The Commonwealth pointed to the bruising and defensive wounds on Amanda's body, the semen present in her vagina, anus, and underwear, and the sheer amount of trauma to her head and body when arguing that the murder occurred in the course of rape.

At trial, Lynch chose not to testify. Defense counsel asked the trial court to allow Lynch's waiver of his right to testify to be on the record. The record reflects that the following exchange occurred after the trial court dismissed the jury for a brief recess and asked everyone present to step out of the courtroom:

> **Court:** [Defense counsel], you wanted to put something on the record?
>
> **Defense Counsel:** Yes, sir. Mr. Lynch is choosing to exercise his right not to testify. And, uh. . .
>
> **Court:** You want to ask him some questions [on the record] and make sure he . . .?
>
> **Defense Counsel:** Yes, sir.

4

**Court:** Okay. Go right ahead.

[. . .]

**Defense Counsel:** Are you Donald Matthew Lynch?

**Lynch:** Yes, sir.

**Defense Counsel:** And do you understand that you have a right to testify here today, and that's only something you decide?

**Lynch:** Yes, sir.

**Defense Counsel:** Has it also been explained to you that you have a right not to testify?

**Lynch:** Yes, sir.

[. . .]

**Defense Counsel:** Now, Mr. Lynch, based on this knowledge you have—that you have a right to testify or right not to testify—that is completely your choice. What are you choosing to do?

**Lynch:** I am choosing not to take the stand and testify due to the fear of retaliation on certain things or, say, things come out.

**Defense Counsel:** Okay, so you're choosing not to testify?

**Lynch:** Yes, sir.

**Defense Counsel:** Judge, I think that's all I have of this witness.

**Court:** What was the reason?

**Lynch:** Fear of retaliation due to certain affiliations of witnesses and relations to motorcycle clubs. Physical health reasons that might arise later if I do [testify].

**Court:** I don't quite follow the logic of that. So, you're being tried for murder here, and you're saying that for fear of retaliation you don't want to testify in your defense?

**Lynch:** Fear and retaliation by certain people who have been called to the stand. Their affiliation with certain clubs and relations to a lot other people around based on knowledge I have of that person and the club, he's affiliated with, I choose not to testify. It puts my life and the family of mine that is still alive in danger, because he has been to a state where my family is living, the surviving members of my family. Based on the facts and the evidence I know of his affiliation, it is detrimental to me and my family if I do get up there and disclose certain stuff and also that I don't feel that at this time that it it's going really change anything that's been presented.

**Court:** Alright. Okay, alright, thank you very much.

The jury then convicted Lynch on all counts. This appeal followed. Additional facts are discussed below as necessary.

## II.   ANALYSIS

Lynch alleges three errors on appeal. First, that the trial court erred by failing to inquire about Lynch's waiver of his constitutional right to testify. Second, that the trial court erred by failing to direct a verdict of acquittal on rape in the first degree. Third, that the trial court erred by failing to direct a verdict of acquittal on tampering with physical evidence.

### A. The trial court did not commit reversible error during Lynch's waiver of his right to testify.

Lynch asks this Court to broaden the scope of a trial court's duty to protect a defendant's right to testify. He argues that, because he stated on the

record that he was waiving his right to testify due to fear of retaliation from the witness and his motorcycle club, the trial court should have inquired further regarding the voluntariness of his waiver. He does not articulate what actionable result further inquiry would have ultimately taken the form of. Instead, he states that the lack of further inquiry so severely impeded his constitutional rights that he is now entitled to a new trial. And, he asks this Court to adopt a new rule that requires trial courts to engage in an in-depth questioning of the defendant regarding the waiver of the right to testify to assess voluntariness if the trial court is aware of **any** impediment to the defendant's ability to exercise that right. Such a rule is impractical and prone to inconsistent application. For the reasons discussed below, we decline his invitation to adopt that rule.

### 1. Standard of Review

This issue is unpreserved.[2] Though defense counsel moved for Lynch's waiver to be on the record, defense counsel did not object to the limited colloquy that did occur, nor did counsel question Lynch further concerning the voluntariness of the waiver. And, neither did defense counsel object when the trial court accepted Lynch's waiver. Because this issue is unpreserved, Lynch has requested review pursuant to RCr 10.26.[3] This Court's review of an

---

[2] Kentucky Rule of Criminal Procedure (RCr) 9.22.

[3] This Court employed the palpable error standard of review to the question of whether a trial court must engage in colloquy to determine if a defendant's waiver of the right to testify is voluntary and knowing in *Florence v. Commonwealth*, 120 S.W.3d 699 (Ky. 2003).

7

unpreserved error that affects substantial rights is limited to whether palpable

error was committed by the trial court.[4]  A palpable error, which must be

However, we note that which standard of review to apply in cases concerning the right to testify is hotly contested.  *See Arthur v. United States*, 986 A.2d 398, 415 (D.C. 2009) (stating that, because the right to testify has been declared a "'fundamental right,' . . . harmlessness analysis is 'entirely misplaced. To apply such an outcome-determinative analysis at worst denigrates the position of the individual with respect to his own defense and trial and at best exhibits an unthinking paternalism toward criminal defendants.'"); *Frey v. Schuetzle*, 151 F.3d 893, 898 n.3 (8th Cir. 1998) ("[W]e note that it is unclear if harmless error analysis applies to the denial of a defendant's right to testify.");  *See also United States v. Butts*, 630 F. Supp. 1145, 1148 (D. Me. 1986); *But cf. Brown v. Artuz,* 124 F.3d 73, 80 (2d Cir. 1997) (applying harmless error review and noting that where defendant would have testified only "to demonstrate that the prosecution failed to disprove his defense of justification beyond a reasonable doubt," argument for prejudice is weaker); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991) (holding that it was not harmless error for the court to refuse to exclude evidence of prior convictions, which resulted in defendant's decision not to take the stand); *United States v. Leo*, 941 F.2d 181, 195 (3d Cir. 1991) (stating that although "[w]e believe that the district court abused its discretion when it ruled that [defendant] could not testify in his own defense . . ., that error does not provide the basis for a new trial if the error was harmless beyond a reasonable doubt."); *Ortega v. O'Leary*, 843 F.2d 258, 262-63 (7th Cir. 1988) (holding that trial court's refusal to reopen evidence to include defendant's testimony was constitutional error, and that "the context of the case will indicate whether the error was harmless beyond a reasonable doubt") (citation omitted); *United States v. Phillips*, 664 F.2d 971, 1042 (5th Cir. 1981) ("[E]ven if we assume that [defendant] did not waive his right to testify when he stated to the trial court that he no longer planned to take the stand, we conclude that the deprivation of [defendant's] right to testify in his own behalf was error that was harmless beyond a reasonable doubt . . . because the evidence of [defendant's] guilt was overwhelming.") *overruled on other grounds by United States v. Huntress*, 956 F.2d 1309, 1317 (5th Cir. 1992).

Either way, the United States Supreme Court has yet to address whether denial of the right to testify is a structural error, which would result in automatic reversal, or a "trial-type" error that is subject to harmless error review.  This Court, absent that guidance, has employed the harmless error review to this issue, where we were cognizant of this ongoing debate.  *Quarels v. Commonwealth*, 142 S.W.3d 73 (Ky. 2004).  But, because the error is unpreserved, we need not and will not wade back into the contentious debate of which standard to employ.

[4] RCr 10.26.

obvious and serious,[5] exists where there is "a probability of a different result or error so fundamental as to threaten due process."[6]

### 2. Defense counsel—not the trial court—has a duty to act when he or she is aware of an impediment to their client's free exercise of the right to testify.

The United States Supreme Court has held that a defendant's right to testify on his or her own behalf at trial springs from the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[7] And, Kentucky law protects the defendant's right to testify.[8] Of course, the corollary right of the right to testify is the right *not* to testify—i.e. to remain silent.[9] Only the defendant may exercise the right to testify or refuse to exercise that right, free from improper influence by the court and without undue encumbrance by counsel.[10] In short, the right to testify is a right to choose between the competing rights of testifying and remaining silent, both of which are rooted in the state and federal constitutions and, in the Commonwealth, buttressed by statute. The choice of one right inherently means the surrender of the other.

The defendant's waiver of the affirmative right to testify, whether through silence or statement on the record, must be "knowing and

---

[5] *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997).

[6] *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

[7] *See Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987).

[8] Ky. Const. § 11; Kentucky Revised Statute (KRS) 421.225; *See Quarels*, 142 S.W.3d at 78 (Ky. 2004); *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 419 (Ky. 2011).

[9] *Rock*, 483 U.S. at 52-53.

[10] *Quarels*, 142 S.W.3d at 78–79.

voluntary."[11]  If a defendant says nothing to the trial court concerning his or her wish to testify against advice of counsel, then the court is to infer that the defendant has waived this right as part of trial strategy, and the court is under no obligation to inquire about a waiver.[12]  This "no-inquiry"[13] rule is, generally, employed regularly across the Commonwealth as standard practice.[14] However, if the court knows a defendant wishes to testify and his or her counsel is attempting to prevent that defendant from testifying, then it is incumbent upon the court to ensure the defendant's right to testify is protected through direct colloquy, on the record, and out of the presence of the jury.[15] The trial court must be careful not to intrude on the attorney-client relationship[16] and must also avoid language so stern as to persuade a defendant into exercising or waiving the right.[17]

This Court has held that a direct colloquy with the defendant is best practice when a trial court is aware of a dispute between the defendant and

---

[11] *Watkins v. Commonwealth*, 105 S.W.3d 449, 453 (Ky. 2003) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)).

[12] *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000); *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007).

[13] Some courts call this the "demand" rule, because a defendant must demand their right to testify, or it is waived.  *See, e.g., Boyd v. United States,* 586 A.2d 670, 676 (D.C. Cir. 1991).

[14] *Riley v. Commonwealth*, 91 S.W.3d 560, 562 (Ky. 2002) (quoting *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995), "Where the trial court has no reason to believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right.")).

[15] *Crawley v. Commonwealth*, 107 S.W.3d 197, 199 (Ky. 2003).

[16] *Riley*, 91 S.W.3d at 562-63.

[17] *Woolfolk,* 339 S.W.3d at 421.

10

defense counsel concerning the right to testify,[18] but we have yet to establish exactly what a trial court is to do in a situation as the one presented here, where it is not defense counsel, but a witness, who has allegedly inhibited the defendant's right to testify.  The United States Supreme Court has, to date, been wholly silent on whether or when it is appropriate for a trial court to engage in direct colloquy with a defendant, or what measures a trial court should take to ensure that defendant's right to testify is satisfied.  Lower federal courts disagree as to precisely what procedure trial courts are to follow.[19]  And, state courts take even more disparate approaches as to when a

---

[18] *See Crawley,* 107 S.W.3d at 199.

[19] A majority of federal circuits follow some version of the "no-inquiry" or "demand" rule.  *See United States v. Ortiz*, 82 F.3d 1066, 1069 n.8 (D.C. Cir. 1996) (holding that the trial court has no duty to *sua sponte* conduct an on-the-record colloquy regarding defendant's waiver of the right to testify, but the situation may arise where it should do so); *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987) ("[A] criminal defendant 'must claim' his privilege or right to testify 'by attempting to take the stand or it is waived.'"); *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) ("We agree with those courts that place no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right."); *United States v. Leggett*, 162 F.3d 237, 246 (3d Cir. 1998) (finding no error in trial court's failure to ascertain whether defendant had waived right to testify, collecting cases); *Webber*, 208 F.3d at 550–51 ("Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so."); *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165–66 (7th Cir. 2008) (stating that a colloquy regarding defendant's waiver of the right to testify is not required, but is within the court's discretion); *United States v. Ehrmann*, 421 F.3d 774, 783 (8th Cir. 2005) ("A district court is not required to obtain from a defendant an express, on-the-record waiver of his right to testify."); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990) (stating that a defendant's "silence at trial effectively waived his right to testify on his own behalf"); *United States v. Teague*, 953 F.2d 1525, 1533 n.8 (11th Cir. 1992) (en banc) (holding "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify," and "it would be inappropriate to require the trial court to discuss this choice with the defendant").

trial court must step in to protect a defendant's right to testify, and even then

what the trial court is obligated to do to defend that right.[20]

---

[20] Some state courts require the trial judge put the waiver colloquy on the record, regardless of whether there is a conflict between the defendant and defense counsel. *See LaVigne v. State*, 812 P.2d 217, 222 (Alaska 1991) (stating "judges should make an on-the-record inquiry after the close of the defendant's case, although out of the jury's hearing, into whether a non-testifying defendant understands and voluntarily waives his right"); *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984) (holding "[a] trial court exercising appropriate judicial concern for the constitutional right to testify should" conduct a colloquy with the defendant); *Tachibana v. State*, 900 P.2d 1293, 1299–1305 (Haw. 1995) (stating that a colloquy must be conducted at the trial court level because burden imposed by post-trial challenges absent on-the-record waiver was significantly higher); *Culberson v. State*, 412 So.2d 1184, 1186 (Miss. 1982) (stating that "in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify"); *State v. Neuman*, 371 S.E.2d 77, 82 (W. Va. 1988) (adopting the reasoning and procedures outlined by the Colorado Supreme Court in *Curtis,* supra); *State v. Anthony*, 860 N.W.2d 10, 20 (Wis. 2015) (holding "we require that a circuit court 'conduct a colloquy with the defendant in order to ensure that the defendant is knowingly and voluntarily waiving his or her right to testify.'").

Other state courts only require a trial court to engage in direct colloquy with the defendant regarding the waiver when the court is aware that the waiver is somehow constitutionally deficient. *See Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), *reh'g granted* (Mar. 30, 2000) (stating "[u]nder normal circumstances, therefore, the trial judge should play no role in this procedure, unless the judge believes there is evidence that the defendant is not making a valid waiver of the right to testify"); *Torres-Arboledo v. State*, 524 So.2d 403, 409–11 (Fla. 1988) (collecting authority and concluding that the right to testify "does not fall within the category of fundamental rights which must be waived on the record by the defendant himself"); *Sanford v. State*, 695 S.E.2d 579, 584 (Ga. 2010) (stating "there is no requirement that the trial court have an on-the-record colloquy with a non-testifying defendant in order to inform the defendant of the right to testify and to obtain a knowing and intelligent waiver of that right"); *Aragon v. State*, 760 P.2d 1174, 1178–79 (Idaho 1988) ("[T]he defendant's right to testify at trial does not require an on-the-record waiver."); *State v. Breeden*, 304 P.3d 660, 673 (Kan. 2013) ("'A trial court has no duty *sua sponte* to address a silent defendant and inquire whether he or she knowingly and intelligently waives the right to testify.'"); *Commonwealth v. Smith*, 924 N.E.2d 270, 276–77 (Mass. 2010) (stating "[i]t is within the judge's discretion whether to conduct such a colloquy"); *State v. Thomas*, 910 P.2d 475, 478 (Wash. 1996) (en banc) ("[A] trial judge is not required to advise a defendant of the right to testify in order for a waiver of the right to be valid.").

The higher duty to protect a defendant's rights, including the inverse rights to testify or not testify, rests with defense counsel. As the United States Supreme Court stated:

> The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.[21]

The role that defense counsel has in ensuring the fairness of trial, in our view, includes taking appropriate action when defense counsel believes the defendant's rights are not respected. In *Pennycooke*, the Third Circuit Court of Appeals made clear that the duty of providing such advice and of ensuring that any waiver is knowing and intelligent rests with defense counsel, not with the trial court.[22]

Further, the appropriate remedy for a defendant being intimidated from testifying is seeking criminal prosecution for the intimidator. Any defendant threatened specifically should seek the full protection of the law, alert the court hearing the criminal proceedings against him or her, and seek to exclude the testimony of the intimidator, or ask the court to take other protective measures.

With the foregoing in mind, it was, at worst, unwise for the trial court to engage in a direct colloquy with Lynch concerning his right to testify and it

---

[21] *Strickland v. Washington*, 466 U.S. 668, 685 (1984).

[22] *Pennycooke*, 65 F.3d at 13.

should have followed the "no-inquiry" rule. But, as is apparent from the exchange, it was defense counsel—not the trial court—that elicited Lynch's statement that he was fearful for his life due to a witness's affiliation with a biker club. Importantly, Lynch did not specifically state that any covert or overt threat had been made against him. Just that, because he had some awareness of the witness's "affiliation with certain clubs and relations to a lot other people around based on knowledge," he "chose not to testify." And, the trial court had taken steps to ensure that anything Lynch said on the record would be kept in the confines of the courtroom. The court dismissed the jury and asked the public to leave the room. The trial court also placed law enforcement officers outside the doors to ensure no one entered while Lynch spoke on the record. Further, the exchange makes apparent that the trial court did not express any improper opinion about whether Lynch should or should not testify. Obviously, the trial court was concerned that Lynch was not aware of the seriousness of the charges against him, and, reminding him of that, stated: "you're being tried for murder here, and you're saying that for fear of retaliation you don't want to testify in your defense?" Lynch answered affirmatively, and concluded: "I don't feel that at this time that it it's going really change anything that's been presented."

In his brief, Lynch does not assert that he did, in fact, desire to testify, nor does he argue that his trial counsel prevented him from testifying. To be clear, there was no state action that deprived Lynch of exercising his right to testify. Lynch has made no allegation that any threat levied against him,

14

whether real or imagined, was made on behalf of the Commonwealth. And, Lynch's counsel did not impermissibly inhibit that right. Lynch knew he had the right to testify and chose not to. The trial court did not prevent or limit him from exercising that right. Though under no obligation to do so, the trial judge sought briefly to confirm Lynch's decision to waive his constitutional right to testify. We cannot say this was error, let alone an error that resulted in manifest injustice. The short of the matter is that Lynch invites us to find a constitutional violation (separate and distinct from a claim of ineffective assistance of counsel) in the infringement of an accused's right to present a defense by a private party alone, due to the fact that the trial court and defense counsel were aware that he was afraid of retaliation.

Based on the foregoing, we reiterate that, generally, a trial court should refrain from engaging in direct colloquy with a defendant regarding the right to testify, unless the trial court is aware that trial counsel is overriding the defendant's wish to exercise the right to testify. We will not foreclose the opportunity for a defendant to seek review of the actions of a state actor working to prevent the defendant from exercising the right to testify. But, where the alleged impropriety lies with a private actor, we cannot say that the trial court did not, under either the federal or state constitutions, do enough to protect the defendant's right. And, we cannot say that the trial court should have done more than what it did when it had not been asked to do more. As a result, we likewise cannot say that palpable error occurred in the instant case.

15

In conclusion, assuming for the sake of Lynch's argument that the threat against him was real,[23] we hold that where a private actor has worked to impede a defendant's right to testify, no constitutional violation occurs. A trial court should hold steadfast to the "no-inquiry" rule, unless that court is aware of an impediment to a defendant's right to testify that has been impermissibly exercised by defense counsel or the Commonwealth.

## B. Lynch was not entitled to directed verdict on the charges of first-degree rape or tampering with physical evidence.

Lynch argues next he was entitled to directed verdict on the charge of first-degree rape.[24] Ultimately, the trial court determined that there was enough evidence to submit the charge to the jury after hearing argument from both parties concerning Lynch's motion for directed verdict. The trial court stated:

> I think that the evidence is sufficient for a jury to infer that from those circumstances, from the circumstances that occurred at that time, that she was beat up and bludgeoned and found with his semen in her, that a reasonable jury could infer that it was a non-consensual sexual act, and that the bludgeoning occurred for the purpose of keeping her from reporting that, so I'm going to deny the motion.

In *Commonwealth v. Benham*, this Court explained:

> [o]n a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the

---

[23] Lynch did not state with specificity on the record what the threat was, or whether it was real or perceived. A perceived threat is, on an absent record, an imagined one. We cannot just assume that because Lynch says he was threatened that he was.

[24] This issue was preserved by Lynch's motion for a directed verdict. RCr 9.22.

16

evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.[25]

"To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.'"[26] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[27]

KRS 510.040 provides:

> (1) A person is guilty of rape in the first degree when:
>     (a) He engages in sexual intercourse with another person by forcible compulsion.

KRS 510.010 states:

> (2) "Forcible compulsion" means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition.

We now examine the evidence adduced at trial related to rape in the first degree. The jury heard testimony and saw photos of bruising on Amanda's

---

[25] 816 S.W.2d 186, 187 (Ky. 1991).

[26] *Lackey v. Commonwealth,* 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham,* 816 S.W.2d at 187).

[27] *Benham,* 816 S.W.2d at 187.

body.  Dr. Christopher Kiefer (Dr. Kiefer), who performed the autopsy on Amanda, could not say definitively whether the bruises on Amanda's body occurred before or after death.  He noted, however, that bruising after death, while uncommon, can occur.  Dr. Kiefer offered no testimony relating to injuries to the vagina or anus.  There was no medical testimony that would say definitively that any bruising to Amanda's arms, shoulders, or back was due to force applied by Lynch's hands, or whether they were caused by him bludgeoning her to death.  However, the Commonwealth specifically identified the bruising on Amanda's arms, back, and shoulders, and pointed to the semen present in Amanda's underwear, vagina, and anus to argue that all of this was evidence that Lynch held Amanda down to rape her, and then murdered her to cover up the rape.  With the foregoing evidence in mind, we cannot say that "it would be clearly unreasonable for a jury to find guilt"[28] on the charge of first-degree rape.  We agree with the trial court that "a reasonable jury could infer that it was a non-consensual sexual act, and that the bludgeoning occurred for the purpose of keeping her from reporting" the rape.

Lynch contends next he was entitled to directed verdict on the charge of tampering with physical evidence. This issue was unpreserved.[29]   Lynch has requested review for palpable error.[30]  As this Court explained in *Wahl v. Commonwealth*:

---

[28] *Id.*

[29] RCr 9.22.

[30] RCr 10.26.

Palpable error is one "easily perceptible, plain, obvious and readily noticeable." "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." Our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[31]

KRS 524.100 states:

(1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding.

We now examine the evidence adduced at trial related to tampering with physical evidence. The jury heard from Ellis that Amanda had her purse with her when she left the house with Lynch on the night she died. Cell phone data placed Lynch and Amanda's phones together where her body was found. Both cell phone data and his own statement place Lynch in the approximate area that the purse was found on the night she died, but did not reflect whether he traveled along the exact path where Amanda's purse was found by Cox. The jury was allowed to consider Cox's story on how the purse was found and no claims against his credibility were made at trial. Lynch recognizes that a jury is allowed to make reasonable inferences from circumstantial evidence.[32]

---

[31] 636 S.W.3d 484, 501 (Ky. 2021) (internal citations omitted).

[32] *Commonwealth v. James,* 586 S.W.3d 717, 722 (Ky. 2019).

19

Lynch argues that the circumstantial evidence in the case was weak because the purse was found by Cox over a month later in a creek and no forensic testing was possible, therefore, he should have been entitled to a directed verdict. The Commonwealth theorized that, after Lynch raped and murdered Amanda, he threw the purse in the river in an attempt to delay identification of Amanda's body. Though there was no physical evidence that linked Lynch to the purse, the cell phone data placing Lynch in the area as well as his own admission, coupled with the time and nature of Amanda's murder, as well as the physical evidence on Lynch's shoes and Amanda's body, all amount to "more than a mere scintilla of evidence."[33] Considering the whole body of evidence, it was not error—let alone palpable error—for the trial court to allow the jury to hear and consider the charge, because it would not be clearly unreasonable for the jury to find guilt beyond a reasonable doubt based upon that evidence.

### III.    CONCLUSION

For the foregoing reasons, we affirm the Ohio Circuit Court.

All sitting.  All concur.

---

[33] *Benham*, 816 S.W.2d at 187.

COUNSEL FOR APPELLANT:

Jennifer Wade
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Office of the Attorney General